IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PECO FOODS, INC., )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>RETAIL WHOLESALE AND )<br>DEPARTMENT STORE UNION )<br>MID-SOUTH COUNCIL, )<br>)<br>Defendant. ) | 7:16-cv-01345-LSC |

MEMORANDUM OF OPINION

Before the Court are Plaintiff Peco Foods, Inc.'s ("Peco") Motion for Summary Judgment (Doc. 15), and Defendant Retail Wholesale and Department Store Union Mid-South Council's ("RWDSU" or "the Union") Motion for Summary Judgment (Doc. 17). This action arises out of the termination of a Peco employee, and the subsequent arbitration proceeding. Peco filed this action seeking the vacatur of the arbitrator's awards, and RWDSU has counterclaimed, seeking the enforcement of the awards. For the reasons stated below, Plaintiff's motion is due to be denied. Defendant's motion is due to be granted.

I.  Background

Larry Richardson ("Richardson") was employed by Peco and supervised by Rodney Forte ("Forte"). On January 21, 2015, Forte held a safety meeting, where he reminded the employees that throwing ice was prohibited during work hours. (Doc. 17 at 2.) Richardson responded by saying "I don't throw ice, I throw lead." (*Id*.) Recalling a recent workplace shooting at another business, Forte reported the statement to his supervisor. Stephen Johnston ("Johnston"), Peco's Complex Human Resources Director, launched an investigation, which included questioning Richardson about the statement. Richardson did not provide an explanation for his conduct, only stating "I know what other people think I mean, but I don't know what I mean." (Pl. Ex. 1 at 11.) Johnston sent Richardson home for the day, but he was paid as if he had finished his workday. On January 22, 2015, Johnston contacted Steve Conley ("Conley"), the Corporate Human Resource Director, with a recommendation that Richardson be terminated for making a threatening comment. Conley approved the termination.

Richardson was a member of RWDSU, which had a collective bargaining agreement ("CBA") with Peco. The CBA gives Peco the right "to manage its own business, including but not limited to the right . . . to discipline and discharge employees for just cause." (CBA at 2.) It also

provides for a grievance and arbitration procedure as "the exclusive means for the disposition of all grievances" arising out of a "dispute, claim or complaint." (*Id.* at 8.) According to the CBA, grievances are "limited to matters of interpretation or application of express provisions of [the CBA], and they shall be processed as promptly as possible in accordance with the . . . steps, time limits and conditions" set out in the agreement. (*Id.*)

The procedural requirements for grievances, as set forth in the CBA, include a condition that RWDSU "shall give written notice to [Peco] of its intent [to take a grievance to arbitration] within fifteen (15) calendar days of the expiration of the time limit or the date of [Peco's] answer" to the grievance. (*Id.* at 9.) Next, "the parties shall . . . attempt to select an impartial arbitrator." (*Id.*) Further, the CBA states that "[t]he grievance shall be considered settled if not appealed to a higher step within an established time limit and shall not be the subject of any further proceeding." (*Id.*) However, that "provision may be waived in specific instances by mutual written agreement of the parties." (*Id.*) The CBA goes on to define the power of the arbitrator, stating

> The Jurisdiction and authority of the arbitrator and his opinion and award shall be exclusively limited to the interpretation and specific application of the written provisions of this

> agreement. The arbitrator shall have no power to add to, subtract from, or modify the terms of this Agreement, or any supplementary agreements, nor rule on any matter except on grievances occurring while this Agreement is in full force and effect between the parties. The arbitrator shall be bound by the facts and arguments submitted to him and may not go beyond the articles and sections of this Agreement, or established past practices, in rendering his opinion and award.

(*Id.* at 10.) Lastly, "[t]he opinion and award of the arbitrator shall be final and binding upon the parties when rendered upon a matter within the authority to the arbitrator and within the scope of matters subject to arbitration as provided in [the CBA]." (*Id.*)

In response to Richardson's termination, RWDSU filed a grievance on his behalf on January 30, 2015. Johnston denied the grievance on February 23, 2015. Then, on March 23, 2015, RWDSU sent Peco a letter requesting arbitration of the grievance. The Union submitted an arbitration request to the Federal Mediation and Conciliation Service ("FMCS"), and Peco received a list of possible arbitrators on March 25, 2015, and another one on February 25, 2016. Peco and RWDSU selected an arbitrator on March 21, 2016. A hearing was held on May 17, 2016. Both parties appeared at this proceeding and had the opportunity to present evidence. Peco argued that the arbitrator did not have jurisdiction to decide the grievance because "it did not demand

arbitration of Peco's decision within the proscribed time period of the [CBA]." (Pl. Ex. 1 at 9.) It also argued that it "was within its broad right . . . to terminate Richardson for cause," because, even if the comment was a joke, it violated Peco's "no horseplay and practical jokes rule." (*Id.* at 9, 12.) Lastly, Peco argued that "Richardson [was] not entitled to any back pay because he did not mitigate his damages by making a good faith effort to obtain replacement employment and the Union did not prosecute the request for a hearing in an efficient and reasonable manner." (*Id.* at 9.)

In contrast, RWDSU argued that the arbitrator did have jurisdiction to decide the grievance, claiming that Peco waived the timeliness requirement because despite multiple discussions about resolution over a fifteen-month period, Peco "waited until its opening statements at the hearing to raise a challenge to the Grievance's procedural arbitrability." (*Id.* at 25) RWDSU also claimed that Peco did not have just cause for terminating Richardson, because his comment was not threatening, and did not violate any of Peco's policies.

In his award, the arbitrator decided that Peco "accepted the Grievance and waive[d] its challenge to the Grievance['s] procedural arbitrability." (*Id.* at 36.) The arbitrator held that the grievance was

therefore arbitrable, and that he had jurisdiction over the merits. He also found that Richardson's statement was not a threat and that Peco's argument that he had violated a rule against horseplay was untimely, because it was not raised before the arbitration hearing. Therefore, Peco did not have just cause for terminating Richardson. Based on Richardson's testimony that "he received unemployment compensation for a period of time and worked for an American Thrift store," the arbitrator found that Richardson was entitled to back pay for "the difference between (1) his unemployment compensation for the period of time he received it and his usual pay at Peco and (2) his pay at the thrift shop and what he would have earned had he not been terminated." (*Id.* at 44.)

However, he left it up to the parties to decide if Richardson was entitled to back pay for the period of time during which he did not receive unemployment compensation or work at the thrift store. Peco was ordered to "reinstate Larry Richardson to his former job, restore his seniority, and make him whole for his losses." (*Id.* at 44-45.) The arbitrator retained jurisdiction over the matter for sixty days after his decision, in order to resolve any remaining disputes. On September 12, 2016, RWDSU invoked the arbitrator's jurisdiction in order to resolve the

remaining issue—whether Richardson was entitled for back pay for the periods when he did not work for the thrift store or receive unemployment compensation. In a supplemental arbitration award on September 12, 2016, the arbitrator held that "Richardson failed to make a 'reasonable good faith effort of seeking other employment' during these other periods [when he was not working for the thrift store and did not receive unemployment compensation] and is not entitled to any additional compensation." (Doc. 19-5 at 2.) Peco filed this action on August 18, 2016, seeking to vacate the arbitrator's award. On September 13, 2016, RWDSU counterclaimed, seeking enforcement of the award.

II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.*

at 249.

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id*. Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

III. Discussion

When parties submit a case for arbitration pursuant to a CBA, the award "is treated as a contractual obligation that can be enforced through a [29 U.S.C. § 185] suit." *United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union Local 320 v. Wise Alloys, LLC*, 642 F.3d 1344, 1349 (11th Cir. 2011). However, in

order for a Court to enforce an arbitration award, "the arbitrator's interpretation of the [CBA] must be derived from the language of the agreement." *Id.* at 1351. An arbitrator's "award is legitimate only so long as it draws its essence from the [CBA]." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). In order to determine if the award "draws its essence from the [CBA]," the Court considers whether "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Id.* (quoting *Int'l Union of Dist. 50, UMWA v. Bowman Transp., Inc.*, 421 F.2d 934, 936 (5th Cir. 1970)).

    A. Jurisdiction

Peco moves to vacate the arbitration award, claiming that the arbitrator did not have jurisdiction to hear the grievance, because RWDSU did not meet the fifteen-day deadline for requesting arbitration after Richardson's grievance was denied. It is undisputed that RWDSU did not request arbitration until thirteen days after the deadline for such a request had passed. RWDSU, however, reiterates the arbitrator's decision that Peco waived this timeliness challenge by failing to bring it up until the arbitration hearing.

Peco alleges that the arbitrator's holding that the grievance was arbitrable does not draw its essence from the CBA, because the CBA states that "[t]he grievance shall be considered settled if not appealed to a higher step within an established time limit and shall not be the subject of any further proceeding." (CBA at 9.) Further, Peco asserts that the arbitrator's holding is contrary to the CBA, because the CBA does not require that arbitrability issues be raised prior to an arbitration hearing.

The parties agree that the arbitrability of this grievance was a question for the arbitrator. However, Peco asserts that this means that the issue was properly raised for the first time at the hearing before the arbitrator—because "[t]he Arbitrator did not require the preliminary consideration of jurisdictional defenses before the hearing date." (Doc. 16 at 11.) Thus, Peco argues, the arbitrator's award is contrary to the language in the CBA, and should be vacated. Yet "it is not the function of the Court to second guess the arbitrator on matters that were within his power to decide." *Shopmen's Local 539 of Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers v. Mosher Steel Co.*, 796 F.2d 1361, 1365 (11th Cir. 1986).

In *Mosher*, an arbitrator held that a timeliness requirement, similar to the one at issue in this action, had been waived by the employer's

failure to raise it before the arbitration hearing. The employer filed an action in federal district court, seeking to vacate the arbitration award and have the grievance declared unarbitrable. The District Court ruled in the employer's favor. However, the Eleventh Circuit reversed this decision, holding that the finding of waiver was "premised on the arbitrator's construction of the contract and his understanding of the intent of the parties." *Id.* at 1366 (quoting *Drummond Coal Co. v. UMWA, Dist. 20*, 748 F.2d 1495, 1497 (11th Cir. 1984)). The *Mosher* court based its decision on *Drummond*, holding that *Drummond* "answered all of the issues raised" in *Mosher*.

In *Drummond*, the court held that "[t]he arbitrator's decision not to resolve the dispute on the basis of the language in the [CBA] requiring [compliance with a time limit] does not . . . require this court to vacate the arbitral award," because "[a]rbitrators have frequently recognized that parties may waive or otherwise be estopped from asserting rights granted under the [CBA]." *Drummond*, 748 F.2d at 1498. Further, it held that an arbitrator's award of waiver is not "within the province of the courts . . . to review," because it "is based upon the arbitrator's factual assessment of the actions and intentions of the parties; it rests upon a determination of the merits of the case." *Id.*

As illustrated by *Mosher* and *Drummond*, a finding of waiver may be based on circumstances and facts outside the language of the CBA, because it "necessarily requires the arbitrator to look beyond the contract language to the actions of the parties." *Id*. The parties in this action have agreed that its arbitrability was within the arbitrator's power to decide, and it is clear that any review this Court would undertake would have to be of the merits of the arbitrator's construction. Because "[j]udicial review of an arbitral award is . . . limited to a determination of whether the arbitrator, in making the award, was functioning within his authority" *Id.* at 1497, and the facts of *Mosher* and *Drummond* make it clear that the arbitrator was acting within his authority in this action, the arbitrator's finding of waiver must stand. The Court will not vacate the arbitrator's finding of arbitrability.

### B. Just Cause

Peco argues that the Court should vacate the arbitration award finding that Peco did not have just cause to terminate Richardson because dangerous or threatening conduct such as Richardson's qualifies as just cause for termination under the CBA. Thus, Peco claims, the arbitrator's finding did not draw its essence from the CBA. RWDSU does not dispute that dangerous or threatening conduct constitutes just cause for

termination under the CBA, but asserts that this Court must defer to the arbitrator's finding that Richardson did not engage in threatening conduct. "The courts are not to engage in a review of the merits of the arbitrator's decision." *Drummond*, 796 F.2d at 1497. Here, the arbitrator made a factual finding that Richardson's behavior was not threatening; therefore, his decision about the existence of just cause is based on "factual assessments" that cannot be second-guessed by this Court. *Id.* at 1498. The arbitrator's interpretation of the threatening conduct that constitutes just cause under the CBA is "final and binding on the parties because it is this interpretation that is bargained for by the parties." *Id.* at 1497. Thus, the Court cannot vacate the arbitrator's award finding that Peco did not have just cause for terminating Richardson.

### C. Public Policy

Peco also argues that the arbitration award should be vacated because it conflicts with "public policy against violence and threatening behavior in the workplace." (Doc. 16 at 13.) As evidence of this "public policy," Peco points to 29 U.S.C. § 654(a), which requires employers to "furnish to each of [their] employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [their] employees." Peco also asserts

that "employers can face liability under negligence theories and workers' compensation laws for their failure to prevent workplace violence." (Doc. 16 at 15.)

The Supreme Court has made it clear that, when analyzing a claim that an arbitration award mandating reinstatement under a CBA violates public policy, the Court "must assume that the [CBA] itself calls for . . . reinstatement." *E. Associated Coal Corp. v. UMWA*, Dist. 17, 531 U.S. 57, 61 (2000). Therefore, the question becomes "whether a contractual reinstatement requirement would fall within the legal exception that makes unenforceable 'a collective-bargaining agreement that is contrary to public policy.'" *Id.* at 62 (quoting *W.R. Grace & Co. v. Local Union United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983)). Thus, it is the "agreement to reinstate" which must be contrary to public policy, not the misconduct itself. *Id.* at 62-63.

To fall under this exception, a public policy must be "explicit, well defined, and dominant." *Id.* at 62 (internal quotations omitted). It must also be found in "the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (internal quotations omitted). Thus, in this action, the proper question is whether Richardson's reinstatement runs contrary to the requirement to "furnish .

. . . a place of employment . . . free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a). Peco claims that Richardson's re-employment posed a "hazard that [was] . . . likely to cause death or serious physical harm" because Richardson threatened to discharge a firearm in the workplace. However, the arbitrator found that Richardson's comment was not a threat, and "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Further, "[t]o resolve disputes about the application of a [CBA], an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *Id.* at 37-38. "[T]he fact that it is inquiring into a possible violation of public policy [does not] excuse a court for doing the arbitrator's task." *Id.* at 45.

Here, assuming *arguendo* that Peco has established a public policy sufficient to vacate an arbitration award, "no violation of that policy was clearly shown." *Id.* at 44. In *Misco*, the Supreme Court found that the presence of drugs in an employee's car in the workplace parking lot was not enough to establish that an employee would be on drugs while

working because "[a] refusal to enforce an award must rest on more than speculation or assumption." *Id*. Here, Peco has provided no other evidence that Richardson would engage in dangerous or threatening behavior than his comment about "throwing lead"—which the arbitrator found was not a threat of violence. Even if Peco had provided such evidence, the Court cannot interfere with the arbitrator's factual findings, because "[t]he parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them." *Id*. at 45. Therefore, Peco has failed to show that re-employing Richardson would violate any public policy against exposing employees to unsafe workplaces. The arbitrator's award will not be vacated as in violation of public policy.

    **D.** Back Pay

Peco argues that the arbitrator exceeded his authority because he ordered Peco to pay Richardson backpay "despite Richardson's failure to mitigate his damages." (Doc. 16 at 16.) It also claims that the award "does not draw its essence from the CBA because it makes Richardson more than whole" by granting him back pay without a showing of proper mitigation. (*Id*.) Peco bases these arguments on its assertion that "[t]he Arbitrator . . . acknowledged the fact that [RWDSU] failed to present evidence of Richardson's' efforts to mitigate damages." (*Id*. at 17.)

However, this assertion is inconsistent with the arbitration award, which finds, based on Richardson's testimony, that he received unemployment for a period of time, and worked for a thrift shop for another duration. (Pl. Ex. 1 at 44.) The arbitrator found that this was sufficient evidence of mitigation, and held that Richardson was entitled to back pay for those periods.[1] While Peco may disagree with the arbitrator's decisions about the sufficiency of the evidence and the resulting back pay award, as explained above, these are not sufficient grounds for a court to vacate an arbitrator's award. The Court cannot second guess the arbitrator's factual finding of mitigation, and therefore, will not vacate the arbitration award.

E. Vagueness

Peco also argues that the back pay award is "ambiguous, arbitrary, and capricious because it is not self-executing and requires the parties to calculate Richardson's damages using evidence that was not introduced during the arbitration and that has not been authenticated or sworn." (Doc. 21 at 21.) However, the arbitrator clearly delineated how the back pay award was to be calculated—by subtracting Richardson's

---

[1] In a supplemental award, the arbitrator held that Richardson was not entitled to backpay for the periods when he was not working for the thrift store and did not receive unemployment compensation. However, that award is not challenged by the parties.

unemployment compensation and thrift store pay from his pay rate at Peco—and "an arbitration award requiring reinstatement and backpay, but leaving the calculation of the amount of backpay to the parties, is considered final and enforceable." *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir. 1993). If any disputes should arise about the interpretation of the award, they are to be properly resolved by the arbitrator, and not by this Court. *Id.* ("the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award."). However, Peco has not shown that it has attempted to calculate the amount of back pay, or even that the dispute is about the alleged quantity of the award. Instead, Peco simply disagrees with the arbitrator's basis for the award, which is an evidentiary matter that this Court cannot second-guess. *See Misco*, 484 U.S. at 45. Therefore, the Court cannot vacate the arbitration award on this basis.

IV. Conclusion

For the reasons stated above, summary judgment is due to be granted in RWDSU's favor. The Court finds that the arbitration award is due to be enforced. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this 19th day of June 2017.

_____
L. Scott Coogler
United States District Judge

186291